IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

DEBORAH DUBON, et al.

:

    v.                  : Civil Action No. DKC 2005-3463

:

PRINCE GEORGE'S COUNTY,
et al.                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case are: (a) the motion of Defendants Prince George's County ("The County") and The County Police Chief Melvin High, to dismiss or, in the alternative, to bifurcate (paper 3); and (b) the request of Plaintiffs to amend their complaint (paper 11). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the following reasons, the court will grant the motion to dismiss, albeit with leave to amend in part.

## I. Background

The following facts are undisputed or viewed in the light most favorable to Plaintiffs. On November 30, 2004, at approximately 9:45 p.m., Decedent, Melvin Dubon, was in his residence located in Laurel, Maryland, when two Prince George's County police officers, Cpl. Amy Smith and Defendant "Unidentified Officer on the Scene", arrived in response to a 911 call.[1] The 911 caller reported a

---

[1] In the complaint, Plaintiffs name Cpl. Amy Smith as a
(continued...)

domestic dispute.   Plaintiff Javier Dubon answered the door, and the officers observed two small cuts on Javier's fingers, as well as cuts on Plaintiff Sandra Correa's arm.

Upon hearing the police arrive, Decedent walked from the kitchen at the back of the house toward the front of the house. Decedent took off his boot and threw it toward his brother, Javier Dubon, with whom Decedent was angry.   Immediately thereafter, the officers discharged their weapons and shot Decedent in the torso. Decedent collapsed partially on top of his ten-year-old niece, who was sitting on the couch in the living room less than one foot away from Decedent.   Decedent then bled to death on the floor of the living room as a result of the gun shot wounds.

On December 30, 2005, Plaintiffs Deborah Dubon, the personal representative of the estate of Decedent; Irma Laporta, the legal guardian of Decedent's minor child; Florida Dubon-Romero, the mother of Decedent; Victor Dubon, the father of Decedent; Javier Dubon, the brother of Decedent, and Sandra Correa, the sister of Decedent filed a civil action against Defendants Prince George's

---

[1](...continued)
Defendant.   On May 15, 2006, the court issued an Order to Plaintiffs to show good cause as to why service of the summons and complaint had not been made upon Cpl. Amy Smith, within 120 days of filing the complaint.   Plaintiffs did not respond to the show cause Order and on June 1, 2006, the court dismissed the case without prejudice as to Cpl. Amy Smith, pursuant to Fed.R.Civ.P. 4(m) and Local Rule 103.9.a.

County, Chief High, Cpl. Amy Smith, and "Unidentified Officer on the Scene."

Plaintiffs' complaint is far from a model of clarity. It appears that all claims are alleged against all Defendants, notwithstanding that facts alleged with regard to certain claims refer only to some Defendants. Plaintiffs assert the following claims: (1) Count I, violation of the Maryland Survival Act, Md. Code Ann., Cts. & Jud. Proc. § 3-902 (2006); (2) Count II, violation of the Wrongful Death Act, Md. Code Ann., Cts. & Jud. Proc. § 2-904 (2006); (3) Count III, negligence; (4) Count IV, assault and battery; (5) Count V, a claim pursuant to 42 U.S.C. § 1983 for the deprivation of Decedent's civil rights under the Fourth and Fifth Amendments to the United States Constitution; (6) Count VI, a claim pursuant to 42 U.S.C. § 1983 for failure to train, supervise, etc.; and (7) Count VII, intentional and/or negligent infliction of emotional distress. In response, Defendants Prince George's County and Chief High filed a motion to dismiss or, in the alternative, to bifurcate the § 1983 claims against The County and Chief High. (Paper 3).

## II. Standard of Review

A motion to dismiss pursuant to a Fed.R.Civ.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), *cert. denied sub nom. Am. Home Prods. Corp. v. Mylan Labs., Inc.*, 510 U.S. 1197 (1994)).  The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III.  Analysis

## A.  Federal Claims

Both Counts V and VI of Plaintiffs' complaint purport to allege claims against all Defendants, although the factual bases supporting the claims do not implicate all Defendants.  Count V,

pursuant to 42 U.S.C. § 1983, alleges that Cpl. Amy Smith acted with deliberate indifference to and with reckless disregard for the safety and well-being of Decedent in violation of Decedent's Fourth and Fifth Amendment rights.  Also pursuant to § 1983, Plaintiffs allege in Count VI that Defendants acted negligently, carelessly, recklessly, and with deliberate indifference by failing to train, supervise, control, direct and monitor properly Cpl. Smith and the "Unidentified Officer on the Scene."[2]   (Paper 1, at 11-12). Plaintiffs further allege that as a direct and proximate result of the acts and omissions of The County and Chief High, Decedent was wrongfully and unlawfully shot to death.  *Id.*

The County and Chief High move to dismiss Counts V and VI on the ground that, pursuant to *Monell v. Dept. of Soc. Servs. of New York City*, 436 U.S. 658, 692-95 (1978), Plaintiffs fail to allege properly § 1983 claims.  (Paper 3, at 3).  The County and Chief High state that liability cannot be imposed against a municipality and its decision makers unless some custom, practice, or policy of the municipality itself is the proximate cause of the constitutional violation.  (Paper 3, at 3).  The County and Chief High also state that mere negligence is insufficient to impose liability on a municipality and its officials under § 1983, and

---

[2] Although Plaintiffs do not explicitly state a basis for their § 1983 claim in Count VI, it appears that, like their § 1983 claim in Count V, Plaintiffs are alleging violation of the Fourth and Fifth Amendments.  (Paper 1, at 10-12).

that Plaintiffs must prove reckless disregard, deliberate indifference, or malice on the part of the municipality and its officials. *Id.*

Plaintiffs state that they are suing Chief High in both his individual and official capacities. (Paper 1, at 5). In response to confusion regarding the distinction between suits against public officials in their official and individual capacities, the Supreme Court of the United States has explained:[3]

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 237-238, 94 S.Ct. 1683, 1686-1687, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978).

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

## 1. Claims Against The County and Chief High in His Official Capacity

Defendants are correct in their assertion that, under *Monell*, Plaintiffs cannot sue a local municipality and its municipal officials under § 1983 for injury caused by its employees or agents unless the infliction of such injury was an execution of the municipality's policy or custom. *See Monell*, 436 U.S. at 690 n.

---

[3] Individual-capacity suits are also referred to as personal-capacity suits. *See Kentucky v. Graham*, 473 U.S. 159, 165 n.10 (1985).

55, 694; *see also Chin v. City of Baltimore*, 241 F.Supp.2d 546, 549 (D.Md. 2003) (holding that although the Baltimore police department is subject to suit under § 1983, the complaint fails to state a claim under § 1983 when it has not alleged sufficient facts to establish that a custom or policy of the police department caused the alleged constitutional deprivation). Since *Monell*, the Supreme Court has held that the "inadequacy of police training may serve as the basis for § 1983 liability [, but] only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Spell v. McDaniel*, 824 F.2d 1380, 1389-90 (4th Cir. 1987), *cert. denied sub nom. City of Fayetteville, N.C. v. Spell*, 484 U.S. 1027 (1988). *Monell* and its progeny further require that a plaintiff "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997); *see also Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984) ("[E]ven where such a 'policy' of municipal inaction might be inferred, it must still be shown to have been the 'moving force of the constitutional violation' specifically charged in order to create municipal liability."). For example, in *City of Springfield, Massachusetts v. Kibbe*, 480 U.S. 257, 268-69 (1987), alleged omissions in municipal training were held to be insufficient to constitute a §

1983 claim where there were other factors "that were equally likely to contribute or play a predominant part in bringing about the constitutional injury: the disposition of the officers, the extent of their experience with similar incidents, [and] the actions of the other officers involved," and where there was insufficient evidence that the "municipality's inadequate training 'caused' the plaintiff's injury."

Not only did Plaintiffs fail to discount any potential intervening causes of the shooting, but they also failed to allege *any* facts regarding The County's policies, customs, training, or lack thereof that could have "caused" or been the "moving force" behind the alleged deprivation of Decedent's constitutional rights. Plaintiffs provide only unsupported legal conclusions, *see Revene*, 882 F.2d at 873, and conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters*, 604 F.2d at 847. For example, Plaintiffs state summarily that Defendants acted negligently, carelessly, recklessly and with deliberate indifference by failing to properly train, supervise, control, direct and monitor the officers in their duties and responsibilities, and that as a direct result of the acts and omissions of The County and Chief High, Decedent was wrongfully and unlawfully shot to death. (Paper 1, at 11). Thus, Plaintiffs have not alleged facts sufficient to sustain § 1983 claims against The County or Chief High in his official capacity.

2.  **Claims Against Chief High in His Individual Capacity**

The United States Court of Appeals for the Fourth Circuit has not yet ruled on the issue of whether a plaintiff may maintain a § 1983 suit for failure to train against an official in his or her individual capacity.  Seven other courts of appeal have found, however, that to sustain such an action, a plaintiff must allege either specific conduct and/or direct participation on the part of the supervisory defendant that gave rise to a deprivation of the plaintiff's constitutional rights, or that the supervisory defendant illustrated a deliberate indifference to actions of his or her subordinate, which amounted to a deprivation of plaintiff's constitutional rights.[4]  *See Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005); *Jeffes v. Barnes*, 208 F.3d 49, 55 (2d Cir.), *cert. denied sub nom. County of Schenectady v. Jeffes*, 531 U.S. 813 (2000); *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996); *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1398 (11th Cir. 1994); *Brown v. Grabowski*, 922 F.2d 1097, 1119-21 (3rd Cir. 1990); *Cardenas v. Lewis*, No. 01-36121, 2003 WL 943715, at *3 (9th Cir. Mar. 7, 2003); *Chamberlain v. City of Albuquerque*, No. 92-2089, 1993 WL 96883, at *8-10 (10th Cir. Mar. 29, 1993).

---

[4] In addition, the Seventh Circuit has noted that "'failure to train claims are usually maintained against municipalities, not against individuals . . . .'" Brown v. Budz, 398 F.3d 904, 918 (7th Cir. 2005) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 739-40 (7th Cir. 2001)).

Plaintiffs have not alleged *any* specific facts to illustrate that Chief High engaged in conduct that directly gave rise to the alleged deprivation of Decedent's constitutional rights or that he acted with deliberate indifference to actions of his subordinates that gave rise to the alleged deprivation of Decedent's constitutional rights.   Thus, even if the court concluded that Plaintiffs could assert a § 1983 "failure to train" claim against Chief High in his individual capacity, the complaint still is deficient.   *See Roberts*, 397 F.3d at 292 (Even if a lack of training caused the alleged injuries, the plaintiffs did not provide evidence of the police chief's failure to train or deliberate indifference to the plaintiff's constitutional rights.); *Brown*, 922 F.2d at 1120-21 (To sustain a "failure to train" claim against the police chief in his personal capacity, the plaintiff must provide evidence that the police chief participated in some way in the alleged deprivations of plaintiff's constitutional rights.).   The court therefore will grant the motion of The County and Chief High to dismiss Counts V and VI.[5]

---

[5] The County and Chief High move in the alternative to bifurcate the § 1983 claim alleged in Count VI for purposes of discovery and trial.  (Paper 3, at 9).  Because the § 1983 claims are being dismissed, the alternative request to bifurcate is moot.

**B.  State Claims**

In Counts I, II, III, IV, and VII, Plaintiffs allege Maryland state tort claims.  (Paper 1, at 8-12).  The County and Chief High move to dismiss the claims, asserting that The County and Chief High, in his official capacity, enjoy governmental immunity with regard to tort claims.[6]  (Paper 3, at 7-9).  Plaintiffs concede that The County and Chief High are entitled to governmental immunity for the state tort claims and do not challenge the dismissal of Counts III, IV, and VII as to The County and Chief High in his official capacity.  (Paper 11, at 3).  With regard to Counts I and II, Plaintiffs do not challenge the dismissal of the claims as pled.  Instead, Plaintiffs request that, should the court dismiss Counts I and II, Plaintiffs be given leave to amend their complaint to pursue claims under the Maryland Declaration of Rights.

---

[6] Plaintiffs' complaint states generally that they are suing Chief High in both his official and individual capacity, (paper 1, at 5).  Nevertheless, "a court must look to the substance of the complaint, the relief sought, and the course of proceedings to determine the nature of the plaintiff's claims." *Biggs v. Meadows*, 66 F.3d 56, 58 (4th Cir. 1995).  In their opposition memorandum, Plaintiffs concede that the claims against the County and Chief High should be dismissed because they are entitled to governmental immunity, which is applicable to Chief High only in his official capacity.  Moreover, Plaintiffs do not respond to Defendants' argument that Chief High cannot be held personally liable because he was not present at the shooting, or otherwise address the tort claims against Chief High in his personal capacity.  Accordingly, the court will construe Plaintiffs' complaint as alleging state tort claims against Chief High only in his official capacity.

A local government entity, such as the County, and its officials and employees in their official capacity, such as Chief High, generally are immune from liability for tortious conduct while the entity and its employees are acting in a governmental capacity.  *See DiPino v. Davis*, 354 Md. 18, 46, 48 (1999); *see also Gray-Hopkins v. Prince George's County, Md.*, 309 F.3d 224, 232-34 (4th Cir. 2002); *Williams v. Prince George's County, Md.*, 112 Md.App. 526, 549-54 (1996).  A local governmental entity is liable, however, "if the tortious conduct occurs while the entity is acting in a private or proprietary capacity."  *Dipino*, 354 Md. at 47; *see also Gray-Hopkins*, 309 F.3d at 232.  Plaintiffs do not argue that any of the defendants were acting in a private or proprietary capacity, and, more importantly, concede that governmental immunity applies with regard to the state tort claims.  Accordingly, Counts I, II, III, IV, and VII will be dismissed as to Defendants Prince George's County and Chief High.

**C.  Amendment**

Because the court will dismiss the complaint as it relates to Prince George's County and Chief High, Plaintiffs' request that they be allowed to amend their complaint to state claims under Articles 24 and 25 of the Maryland Declaration of Rights and to replead *Monell* liability must be addressed.  (Paper 11, at 2-3). Rule 15(a) provides in part that leave to amend "shall be freely given when justice so requires."  Fed.R.Civ.P. 15(a).  "In fact,

12

such leave 'should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)) (internal quotation and citation omitted).  Under Rule 15(a), the decision whether to grant leave to amend rests "within the sound discretion of the district court."  *Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W. Va.*, 985 F.2d 164, 167-68 (4th Cir. 1993) (noting that "the federal rules strongly favor granting leave to amend").

Unlike Maryland state tort claims, "neither the local government official nor a local governmental entity has available any governmental immunity in an action based on rights protected by the State Constitution."  *DiPino*, 354 Md. at 51; *see also Gray-Hopkins*, 309 F.3d at 234; *Williams*, 112 Md.App. at 546.  Local government entities do have, therefore, "*respondeat superior* liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of the employment."  *Dipino*, 354 Md. at 51-52.  Thus, the claims do not appear to be futile.  Moreover, Defendants do not assert either that amendment would be prejudicial to them or that Plaintiffs have exercised bad faith.  Defendants argue only that Plaintiffs have

had ample time to amend their complaint (paper 15, at 2), which, alone, is an insufficient reason to deny Plaintiffs' request to amend.  Thus, the court will grant Plaintiffs' request to amend the complaint to state claims under the Maryland Declaration of Rights and to attempt to plead a *Monell* claim.

## IV.  Conclusion

For the foregoing reasons, the court will dismiss Plaintiffs' § 1983 claims and state tort claims.  Plaintiffs will have leave to amend their complaint.  A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge